UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

KELLY SUE ROBERTS,　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　) Case No. 2-10-cv-82
　　　　　　　　　　　　　　　　　　　) (MATTICE/CARTER)
MICHAEL J. ASTRUE　　　　　　　　　)
Commissioner of Social Security　　　　)
　　　　　　　　　　　　　　　　　　　)

REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the Plaintiff's Motion for Summary Judgment (Doc. 8) and Defendant's Motion for Summary Judgment (Doc. 10).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(I) and 423.

For reasons that follow, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff, born in December 1965, was 40 years old on the alleged disability onset date (Tr. 23, 93). She is a high school graduate and has past work as a scanning coordinator, front manager, cashier, and bookkeeping/cashier (Tr. 98).

1

## Claim for Benefits

Plaintiff applied for Disability Insurance Benefits (DIB) on August 10, 2006 (Tr. 83-86), alleging disability since June 10, 2006 (Tr. 83). After denials at the initial (Tr. 61, 63-66) and reconsideration levels (Tr. 62, 68-70), Plaintiff requested a hearing (Tr. 71). On August 5, 2008, she appeared and testified before Administrative Law Judge (ALJ) Michael J. Davenport (Tr. 28-37). Robert Spangler testified as a vocational expert (Tr. 37-41). On October 17, 2008, ALJ Davenport determined Plaintiff was not disabled because she could perform a significant number of light jobs (Tr. 15-25).

Plaintiff requested Appeals Council review (Tr. 9-11). On February 25, 2010, the Appeals Council declined review (Tr. 1-5), leaving the ALJ's decision as the Commissioner's final decision in this matter. 20 C.F.R. § 404.981. Plaintiff has requested judicial review.

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has

done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990).

Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since January 10, 2006, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease, blood cots, statis dermatitis and an anxiety disorder, NOS (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity for simple, low level detailed light work that allows a sit/stand option.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on xxxxxx, xx, 1965 and was 40 years old, which is defined as a younger individual 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 10, 2006 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-24).

## Issue Raised

Whether the Commissioner's decision that Plaintiff was not under a disability is supported by substantial evidence.

## Relevant Facts

### Medical Evidence

On August 25, 2006, a magnetic resonance imaging (MRI) scan revealed concentric intervertebral disc bulging as well as posterior intervertebral disc protrusion with impression upon the ventral aspect of the thecal sac at L4-5. At L5-S11 there was posterior intervertebral disc bulging at L5-S1, with no significant impression on the ventral aspect of the thecal sac. There was no spinal stenosis, the neural foramina were patent and there were hypertrophic changes of the facet joints bilaterally. The conclusion was intervertebral disc bulging/protrusion at multiple levels and facet joint arthropathy, as noted above. There were postoperative changes at L5-S1 (Tr. 216).

On November 13, 2006, Plaintiff had an Outpatient Admission Intake at a mental health clinic (Tr. 220-25). She reported no previous mental health treatment other than medications prescribed by her primary care physician. The assessed GAF was 55 with 50 the lowest in the last 6 months (Tr. 220). (A GAF of 51 to 60 indicates moderate symptoms and moderate difficulty in social or occupational functioning but a GAF of 41 to 50 indicates serious symptoms and impairment of social and occupational functioning). A counseling session held on February 1, 2007 focused on problems with Plaintiff's son who had been in trouble with the law. She was depressed and anxious (Tr. 229).

On February 8, 2007, Plaintiff saw Wayne Page, M.D. He noted Plaintiff was a poor

historian who had no medical records for review. In her history she reported having an MRI because of numbness in her legs but her doctor told her she did not need an operation and she improved. She reported having another MRI and an operation which "fixed it" referring to pain in the low back and right leg. She was better. She reported an MRI in August of 2006 which she had because of pain. She noted weight loss and exercise were recommended (Tr. 230). On Physical Exam Dr. Page noted tenderness far out of proportion to pressure applied in the thoracic and lumbar region which is another example of pain behavior. Dr. Page noted she had no difficulty getting off and on the exam table or up from a chair, used no assistive device and could life 20 pounds on a one time basis with both hands while standing and can lift greater than 10 pounds with both hands while seated. She had normal mobility (Tr. 232). Dr. Page commented that the medical literature reports activity is therapeutic for muscoloskeletal back pain and inactivity is detrimental. He also reported the literature on diagnostic imagining studies such as degenerative disc disease represented findings that were degenerative and not traumatic and were commonly found in an asymptomatic population (Tr. 234). Dr. Page opined such findings did not represent pain generators (Tr. 234). Dr. Page stated his conclusion that Plaintiff did not have any impairment related physical limitations (Tr. 234).

On February 8, 2007, Plaintiff saw Roy Nevils, Ph.D., a State Agency Clinical Psychologist, pursuant to her claim of disability based on allegations of degenerative disc disease, depression, and anxiety (Tr. 236). Dr. Nevils diagnosed anxiety attacks, and an adjustment disorder with depressed mood (Tr. 240). Dr. Nevils rated Plaintiff's global assessment of functioning (GAF) at 75 (indicative of a person who may or may not have symptoms, but if symptoms are present, they are transient and expectable reactions to psycho-

social stressors; a person with this rating has no more than a slight impairment in social or occupational functioning) (Tr. 240).

On March 21, 2007, state agency reviewing physician, Marcus Whitman, M.D., reviewed the record and opined that Plaintiff had limitations consistent with an ability to perform light work (Tr. 242).

On March 23, 2007, Plaintiff saw Dr. Duncan, the physician who performed her back surgery in July 2003 (Tr. 249). Dr. Duncan reviewed the MRI from August 2006, but stated he could not provide a surgical cure for Plaintiff (Tr. 249). Dr. Duncan predicted Plaintiff would continue to have long-term back pain into her sixties (Tr. 249). He discussed with Plaintiff the importance of regular aerobic exercise and core muscle strengthening (Tr. 249).

On April 17, 2007, state agency reviewing physician, Brad V. Williams, M.D., opined Plaintiff did not have a severe mental impairment, finding only mild limitations in the B criteria of the listings. (Tr. 259, 269).

On October 30, 2007, a state agency reviewing psychologist, Horace F. Edwards, Ph.D., reviewed the record (Tr. 299-311). Dr. Edwards also filled out an MRFCA (Tr. 313-16). Dr. Edwards's assessment of the "B" criteria was almost identical to the assessment of Dr. Williams (who, as noted, found no severe mental impairment -Tr. 269), with one exception. While Dr. Williams found only mild restrictions in concentration, persistence and pace, Dr. Edwards found moderate restrictions in that category (Tr. 309). On the MRFCA, Dr. Edwards rated Plaintiff in the section entitled Summary Conclusions as "not significantly limited" in sixteen of twenty categories (Tr. 313-14). Dr. Edwards also explained his four ratings of "moderately limited" in the Functional Capacity Assessment section of the report (Tr. 315). Dr. Edwards noted Plaintiff

could understand, remember, and carry out detailed but not complex instructions (Tr. 315). Dr. Edwards commented that although Plaintiff would have difficulty, she could sustain attention and concentration, keep to a schedule, maintain attendance, and complete a workweek (Tr. 315). According to Dr. Edwards, Plaintiff could work with and around others, which included the general public, without difficulty (Tr. 315). Dr. Edwards also indicated that Plaintiff could set realistic goals without significant emotional difficulty (Tr. 315).

On November 3, 2006, Plaintiff saw Jean Byarlay, M.D., for a rash on her left leg and she told Dr. Byarlay that she had blood clots in both of her legs (Tr. 340). Dr. Byarlay did a biopsy that revealed dermatitis with clogged vessels (Tr. 340). Dr. Byarlay recommended support stockings and prescribed two topical creams (Tr. 340).

On November 13, 2007, state agency reviewing physician, Frank R. Pennington, M.D., reviewed the record (Tr. 317-24), and opined Plaintiff could perform light work (Tr. 318). Dr. Pennington commented that he did not find any evidence of significant impairment due to venous stasis dermatitis. He noted Plaintiff was uncooperative with grip testing but was able to grasp and manipulate objects normally (Tr. 324). Dr. Pennington also stated he had considered pain and found that pain would not further restrict Plaintiff's RFC (Tr. 324).

On August 4, 2008 Michael Hartsell, M.D., filled out a form (Tr. 355-59), and indicated he felt Plaintiff was incapable of performing even "low stress" jobs, was incapable of walking even one block, could sit for only fifteen minutes at a time, and stand for no more than twenty minutes at a time. He opined she was not a malingerer (Tr. 356). Dr. Hartsell also opined Plaintiff would miss work more than four days each month (Tr. 358).

On August 16, 2007, Plaintiff saw Timothy Sullivan, M.D., for complaints of anxiety and

8

depression (Tr. 337). Dr. Sullivan diagnosed major depressive disorder, recurrent, without psychotic features (Tr. 337). He increased Plaintiff's dose of Effexor and otherwise recommended continuation of her current treatment plan (Tr. 337). On September 26, 2007, Plaintiff saw Dr. Sullivan, who stated she had no complaints of side effects from medications and was doing well on the Effexor (Tr. 334). On December 12, 2007, and on March 11, 2008, Plaintiff again told Dr. Sullivan she had no complaints of side effects from medications and that things had been going well for her over the past several weeks (Tr. 333, 344).

In July of 2008, Plaintiff was seen by Helen Kilday, a Licensed Clinical Social Worker. She reported concerns over family issues and continued to complain of back pain, problems with veins and lumps on her legs. She reported taking antidepressants. She denied being suicidal or homicidal, that there was no evidence of hallucinations or delusions. She was described as depressed and anxious, with stable appetite and stable sleep pattern. She was to continue in treatment (Tr. 345).

Hearing Testimony

A. Plaintiff's Testimony

The ALJ began the hearing by observing that Plaintiff had filed a previous application which was denied in an unfavorable decision on June 9, 2006 (Tr. 29). Thus, her current application identified an onset date of June 10, 2006 (Tr. 29).

Plaintiff, a "younger individual," who has at least a high school education (Tr. 23), testified she could not work due to constant pain in her back, legs, feet, and hands (Tr. 29). She noted she took pain medication and it caused the side effect of sleepiness (Tr. 31). Plaintiff doubted she could stand in one place for longer than ten minutes, or sit in a chair for more than

thirty minutes (Tr. 32).

B. Vocational Expert's Testimony

Mr. Spangler described a work history that included Plaintiff working as a cashier/bookkeeper, scanning coordinator and as a front-end supervisor (Tr. 38). He classified both jobs as light and semi-skilled (Tr. 38). The initial hypothetical question posed by the ALJ assumed a person of Plaintiff's age, education, and vocational background, who was limited to light work that allowed for a sit/stand option (Tr. 38). Mentally, this person would be limited to simple, low-level detailed tasks (Tr. 38). Mr. Spangler replied such a person could work in food preparation, as a cafeteria worker, dishwasher, or maid (Tr. 38). She could also work in non-farm animal care (Tr. 39). Mr. Spangler testified that all of these jobs existed in significant numbers in the local area (Tr. 38-39). Mr. Spangler also testified that a person as limited as the person that Dr. Hartsell described in Exhibit B-22F could not perform any jobs (Tr. 39). Mr. Spangler testified that his statements were consistent with the *Dictionary of Occupational Titles* (DOT) (Tr. 39).

On cross-examination, Plaintiff's representative called Mr. Spangler's attention to a mental residual functional capacity assessment (MRFCA) form filled out by the DDS (Dr. Edwards), noting that it identified moderate limitations in maintaining concentration and attention for extended periods of time and the abilities to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and complete a normal workweek or workday without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and also set realistic goals and make plans independently of others (Tr. 39). Mr. Spangler responded that these

additional limitations would eliminate the jobs he had previously identified (Tr. 40).

ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, June 10, 2006 (Tr. 17). At step two, the ALJ identified severe impairments, including degenerative disc disease, blood clots, statis dermatitis, and an anxiety disorder (Tr. 17). At step three, the ALJ determined that none of Plaintiff's impairments, whether considered singly, or in combination, met or equaled the requirements of one found in the Listing of Impairments (Tr. 20). Between steps three and four, the ALJ determined Plaintiff's residual functional capacity (RFC- what the claimant remains capable of doing, in spite of her limitations, 20 C.F.R. § 404.1545). The ALJ determined that Plaintiff could perform light work that allowed her a sit/stand option and limited her to low level detailed work (Tr. 21). The ALJ considered the medical evidence of record and concluded that Plaintiff's allegations of limiting symptoms were credible only to the extent that they were inconsistent with Plaintiff's RFC (Tr. 23). At step four, the ALJ determined that Plaintiff could not perform any of her past relevant jobs (Tr. 23). At step five, the ALJ applied the medical-vocational guidelines in conjunction with the testimony of the vocational expert and identified light jobs that Plaintiff could perform (Tr. 23-24).

Analysis

Plaintiff argues the decision of the ALJ is not based on substantial evidence. She finds support for her argument in the opinion of her primary care physician, Dr. Hartsell, who, on August 4, 2008, approximately two months prior to her hearing completed a form (Tr. 355-59). The findings on that form not only limited Plaintiff to less than a full range of sedentary work,

they also included Dr. Hartsell's opinion that she would be absent from work more than four days each month (Tr. 358). The ALJ rejected this opinion as inconsistent with opinions from Dr. Page, who felt Plaintiff had no impairment related physical limitations (Tr. 234), and also inconsistent with Dr. Hartsell's own findings on examination (Tr. 21). As the ALJ observed, with the exception of findings of some lumbar tenderness, and abnormal results on straight leg raising tests, Dr. Hartsell's examinations failed to demonstrate evidence of muscle atrophy, muscle flaccidity, decreased ranges of motion, muscle, motor, sensory, or reflex loss, or difficulty walking (Tr. 22).

Dr. Hartsell's severe restrictions are also inconsistent with the opinions of at least two state agency physicians — Dr. Whitman, who reviewed the record in March 2007, and opined Plaintiff could essentially perform light work (Tr. 242), and Dr. Pennington, who came to same conclusion after reviewing the record eight months later, in November 2007 (Tr. 318).

Plaintiff attempts to support the opinions on Dr. Hartsell's form by referring to an MRI from August 2006 (Doc. 9, Plaintiff's Brief at 12, referring to Tr. 215-17). Dr. Page put little emphasis on these MRI but it is unclear, and appears doubtful, whether he actually reviewed the Plaintiff's MRIs. However, he did conduct a physical examination of Plaintiff and noted the findings she reported from MRIs and saw no reason to place work-related restrictions on Plaintiff. Dr. Page commented that the medical literature suggested these MRI results were not unusual for asymptomatic patients who had degenerative, non traumatic changes in their backs (Tr. 234).

Here there is a conflict in the evidence and it is the ALJ who is charged with weighing the evidence. He was not required to accept the interpretation of the treating physician, if other

physicians had a different interpretation. The ALJ could have accepted Dr. Page's opinion that Plaintiff had no impairment-related physical limitations. The ALJ, however, considered all of the evidence and limited Plaintiff to a greater extent than Dr. Page did. In addition, as the Commissioner argues, by requiring a sit/stand option for Plaintiff, the ALJ is limiting her to an even greater extent than did either of the two state agency reviewing physicians, Dr. Whitman and Pennington. This is a record in which the opinions ranged from finding that Plaintiff was unable to do anything (Dr. Hartsell) and a finding that Plaintiff had no limitations whatsoever (Dr. Page). The ALJ's RFC assessment, limiting Plaintiff to light work with a sit/stand option is reasonable in light of all of the conflicting evidence. Here, the ALJ gave good reasons explaining why he could not accept Dr. Hartsell's opinions. The ALJ's rejection of Dr. Hartsell's form/opinion must be upheld because it is supported by substantial evidence. Here the record contained the form completed by plaintiff's treating physician, the conflicting opinion of Dr. Page that Plaintiff had no limitations and the opinions of two State Agency Physicians, Dr Whitman and Pennington. The ALJ, who stands at the end of the process, has the obligation to consider the entire record evidence and, with the advantage of seeing the entire record including the hearing testimony, make the ultimate decision concerning disability. It is the province of the Commissioner to weigh the evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("The trier of fact has the duty to resolve [the medical evidence] conflict"). I conclude that the ALJ has done so and there is substantial evidence to support his conclusion.

<u>Evidence of a Mental Impairment and Dr. Edwards' Review</u>

Plaintiff argues the review by state agency reviewing psychologist, Dr. Edwards, supports a finding of disability (Doc. 9, Plaintiff's Brief at 14). However, other evidence supports the

13

ALJ's conclusion of no disability. Dr. Nevils, a consultative examiner, who saw her in February 2007, opined she had few, if any, mental problems and assigned her a GAF rating of 75, a rating indicative of a person with no more than a slight impairment in social or occupational functioning (Tr. 240). Another state agency reviewer, Dr. Williams, opined Plaintiff did not have a severe mental impairment (Tr. 259, 269). Further, as the Commissioner notes, there are similarities in the opinions of Dr. Williams and Dr. Edwards. Both evaluated the four "B" criteria (compare Tr. 269, 309). Both agreed Plaintiff had mild restrictions in activities of daily living, that she had mild difficulties in social functioning, and that she had no episodes of decompensation (Tr. 269, 309). The only difference in the "B" criteria" evaluations of Drs. Williams and Dr. Edwards was that Dr. Edwards found moderate difficulties in maintaining concentration, persistence and pace (Tr. 309), whereas Dr. Williams saw only mild difficulties in that area (Tr. 259).[1]

Despite this single difference between Dr. Williams, who opined that Plaintiffs mental impairments were not severe, and Dr. Edwards, Plaintiff argues that Dr. Edwards' opinion would support a finding of disability. I disagree. The differences between these two opinions as demonstrated are minor.

Plaintiff's argument isolates a few checkmarks in the Summary Conclusion section of the form. In addition to the four areas in which Dr. Edwards rated "moderately limited" the form in question included sixteen other areas. These are shown in section 1 of the form under Summary

---

[1] Had Dr. Edwards found a mild limitation in maintaining concentration, persistence, and pace, then he too would have determined that Plaintiff did not have a severe mental impairment. *See* 20 C.F.R. § 404.1520a(d)(1) (if we rate the degree of your limitation in the first three categories as "none" or "mild" and the "none" in the fourth area, we will generally conclude that your impairment is not severe.

Conclusions. The MRFCA form asks the reviewer to assess the claimant's capabilities in twenty areas that are considered essential to the mental aspects of work. When Dr. Edwards assessed Plaintiff's capabilities, he found that she was "not significantly limited" in sixteen of the twenty areas (Tr. 313-14). That means Dr. Edwards found Plaintiff "not significantly limited" in such complex areas as an ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to sustain an ordinary work routine without special supervision (Tr. 313). Although Dr. Edwards found "moderately limited" in four areas, he added comments that explained these limitations. These are found in the Functional Capacity Assessment section of the report. Even though he found Plaintiff "moderately limited" in her ability to maintain attention and concentration for extended periods and in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances as set out in the Summary Conclusions section of the report (Tr. 313), he also commented in section III of the report under Functional Capacity Assessment and concluded Plaintiff could keep to a schedule, maintain attendance, and complete a workweek (Tr. 315). In a similar fashion, although Dr. Edwards checked the box indicating that Plaintiff was "moderately limited" in her ability to set realistic goals or make plans independently of others in the Summary Conclusions section of the report (Tr. 314), he commented in the Functional Capacity Assesment section of the report that Plaintiff could set realistic goals without significant emotional difficulty (Tr. 315). When one considers the report as a whole including those comments in Section III, these findings are not a basis for remanding this case. Dr. Edwards' Functional Capacity Assessment is consistent with the remainder of the mental evidence, including Dr. Page's consultative examination. The Commissioner argues the ALJ reasonably paid little attention to

15

the MRFCA exhibit submitted by Dr. Edwards, because the exhibit contradicted itself, and to the extent it saw Plaintiff as "moderately limited" in certain areas, it was inconsistent with the remainder of the other mental health evidence of record. It appears, however, that Dr. Edwards simply noted his summary conclusions and then explained in his Functional Capacity Assessment that she was less limited than set out in the Summary Conclusions section. Looking at the record as a whole, I conclude there is substantial evidence to support the findings of the ALJ.

Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the conclusion of the ALJ and I therefore RECOMMEND the Commissioner's decision be AFFIRMED.

I further RECOMMEND Defendant's Motion for Summary Judgment (Doc. 10) be GRANTED, and Plaintiff's Motion for Summary Judgment (Doc. 8) be DENIED.[2]

*s/William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).